UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

MARTIN A. CROSSLEY

No. 20 CR 369

Judge Martha M. Pacold

## GOVERNMENT'S CONSOLIDATED MOTIONS IN LIMINE

The United States of America, by its attorney, John R. Lausch, Jr., United States Attorney for the Northern District of Illinois, respectfully submits the following consolidated motions *in limine*.

## I.     Background

On July 11, 2020, at approximately 11:00am, the defendant, Martin Crossley, robbed the Glen Ellyn Bank and Trust located at 357 Roosevelt Road, Glen Ellyn, Illinois.

Defendant entered the bank wearing a disguise consisting of glasses (which defendant doesn't regularly wear), a hat, a long-sleeved shirt, a red bandana, and a reflective safety vest. Defendant waited until a teller was free and then approached a counter window. Defendant placed a demand note on the counter. The demand note was handwritten, in ink, on crumpled paper. The demand note instructed the teller to give the defendant all of her cash, in both drawers, and not to include bait bills. The demand note did not make specific reference to a gun or other weapon. Defendant provided the teller with an envelope to carry the money. While at the teller counter, defendant held his fingers above the counter in an apparent effort to

1

keep them from touching the counter and leaving fingerprints. After the teller gave the defendant the money in the envelope and defendant retrieved the demand note, the defendant quietly left the bank.

On August 27, 2020, a grand jury returned an indictment against the defendant, charging him with bank robbery, in violation of Title 18, United States Code, Section 2113(a). Dkt. No. 25.

More specifically, the indictment alleges that on or about July 11, 2020, defendant, by intimidation, took from the person and presence of a bank employee approximately $4,106 U.S. currency belonging to, and in the care, custody, management, and control of the Glen Ellyn Bank and Trust, 357 Roosevelt Road, Glen Ellyn, Illinois, the deposits of which were then insured by the Federal Deposit Insurance Cooperation.

A trial was held from June 14-22, 2021, which resulted in a mistrial. Dkt. 65, 77. A re-trial is scheduled to begin on September 7, 2021. Dkt. 86.

## II. Motion to Admit Certain Evidence at Trial Pursuant to Federal Rule of Evidence 404(B)

Prior to the bank robbery in this case, the defendant committed three other bank robberies. Over the course of his four bank robberies, he utilized the following *modus operandi*:

- The target of the robbery was a stand-alone bank, rather than a bank within a grocery store, a retail store, gas station, ATM, or other institution.[1]

---

[1] The defendant's criminal history also indicates theft charges of retail locations; however, those were much older, in the 1990's and the government does not seek to introduce them.

- The victim banks were located in a Chicago suburb.

- The defendant wore a "disguise" consisting of a long sleeve shirt, a hat, and glasses (which defendant does not otherwise use).

- The defendant walked into the bank alone, approached a teller and handed the teller a demand note.

- The demand note was handwritten, in ink, on crumpled or scratch paper.

- The handwritten demand note instructed the teller not to trip an alarm, use dye packs, and/or use tracers, such as bait bills.

- The handwritten demand note did not specifically state that defendant had a weapon, and defendant did not show a weapon to the teller.

- The defendant retrieved the handwritten demand note from the teller instead of leaving it on the counter.

- The defendant provided an envelope or bag to the teller and instructed the teller to put money into it.[2]

- The defendant took steps to avoid leaving fingerprints on the counter, by putting shirt sleeve fabric around his hands so he would not leave fingerprints, wiping down the counter with his shirt sleeve, or avoiding placing his fingers on the counter.

- While in the bank, the defendant did not yell or purposefully draw attention to himself other than interacting with the teller(s) with whom he directly interacted. Defendant simply walked out with the cash, in some cases without others in the bank realizing it was being robbed.

Collectively, these actions reflect a *modus operandi* used by the defendant to rob banks. The presence of this combination of actions in this case is evidence of the defendant's identity as the man who robbed the Glen Ellyn Bank and Trust on July 11, 2020. As set forth in more detail below, the government moves to admit evidence of the three prior bank robberies committed by the defendant for the

---

[2] In at least three of the four robberies.

purpose of proving up identity through *modus operandi*, pursuant to Federal Rule of Evidence 404(b)(2).

### A. Factual Summary of Prior Bank Robberies

Prior to the commission of the Glen Ellyn Bank and Trust robbery, the defendant pleaded guilty[3] to three bank robberies, the facts of which are described further below.

### 1. Defendant Robs the PNC Bank in Buffalo Grove, on November 19, 2012.

On November 19, 2012, the defendant robbed the PNC Bank located at 1177 Lake Cook Road, Buffalo Grove, Illinois.

According to his plea agreement, defendant handed a teller a demand note that read words to the effect of, "This is a robbery. This is real. Don't trip the alarm. Give me your money. No bait money." The first teller said she did not have cash in her drawer and slid the note over to a second teller. The second teller read the note, took currency out of the drawer, and placed cash in a plastic bag held by the defendant. Defendant took the bag of cash and his demand note and left the bank.

Security camera footage from inside the bank shows the defendant wearing a disguise consisting of glasses, a Chicago Bears knit hat, and a long-sleeved shirt. The defendant walked into the bank alone, approached a teller and handed the teller a demand note.

According to the victim employees, the demand note presented by the

---

[3] Case No. 12 CR 958, Dkt. 27 (Plea Agreement).

defendant was written in ink, in print handwriting, on a thin piece of cardboard, like that used for cereal boxes or other food packaging. Defendant put his sleeves over his hands in apparent effort to avoid leaving fingerprints. The defendant also provided a plastic bag for the cash. After he retrieved the cash and the demand note, the defendant left the bank quietly; other people in the bank did not appear to realize he had robbed the bank until after he left and a teller yelled out that she had been robbed.

### 2. Defendant Robs the Fifth Third Bank in Oak Brook, on November 29, 2012.

On November 29, 2012, the defendant robbed the Fifth Third Bank located at 1603 West 16th Street, Oak Brook, Illinois.

According to the defendant's plea agreement, he showed a teller a handwritten note. The demand note instructed the teller to give the defendant cash and not to give him any dye packs. The teller provided cash from the drawer, which was $33. The defendant demanded more money, did not receive it, and left the bank with the cash and the demand note.

The government anticipates that evidence and trial would show that the defendant wearing a disguise consisting of glasses, a long-sleeve shirt, and a black and grey knit hat. The defendant walked into the bank alone, approached a teller and handed the teller a demand note. The demand note presented by the defendant was written in ink on a piece of manilla colored paper, which appeared crumpled. The defendant put his sleeves over his hands in apparent effort to avoid leaving

fingerprints.  After defendant retrieved the demand note and cash, he left the bank quietly.

### 3. Defendant Robs the First Merit Bank in Des Plaines, Illinois on November 29, 2012.

On November 30, 2012, the defendant robbed the First Merit Bank located at 678 Lee Street, Des Plaines, Illinois.

According to his plea agreement, defendant approached a teller after removing a plastic liner from a small trash bin. Defendant gave the teller the bag, along with a handwritten note.  The note read, "Robbery, no alarms, No Dye Packs, No Tracers Be Fast, In the Bag."  Defendant attempted to leave the bank with the cash, was confronted by another bank customer and dropped cash, then left the bank with the remaining currency.

The government expects that evidence presented at trial will show the defendant was wearing a disguise consisting of glasses, a long-sleeve shirt, and a knit hat.  The defendant walked into the bank alone, approached a teller and handed the teller a demand note. The teller reached over to take the handwritten note, but the defendant retrieved the note from the counter instead.  The teller placed the cash in a bag provided by the defendant.  During his interaction with the teller, Defendant appears to avoid placing his fingers directly on the counter.

 After retrieving the demand note and case, the defendant left the teller area quietly and headed toward the exit.  On the way out, the defendant was confronted by another bank customer as he was leaving, and got in a scuffle, which caused

6

defendant to drop some of the stolen cash and the demand note. The recovered demand note was handwritten in ink, in print, on a check stub.

### B. Evidence of Defendant's Prior Bank Robberies is Admissible Pursuant to Rule 404(b).

The government moves *in limine* to introduce evidence of "other acts," namely, defendant's robberies of the above-named banks in Des Plaines, Buffalo Grove, and Oak Brook, as evidence of the defendant's identity as the man who robbed the Glen Ellyn Bank and Trust.

Rule 404(b)(1) prohibits the use of "other act" evidence "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1); *United States v. Brewer*, 915 F.3d 408, 415 (7th Cir. 2019). But Rule 404(b)(2) provides a non-exhaustive list of other purposes for which such evidence is admissible. It states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

Fed. R. Evid. 404(b)(2). *See also Brewer*, 915 F.3d at 415 (explaining that Rule 404(b)(2) permits the introduction of other act evidence to prove identity and modus operandi) (citing *United States v. Carson*, 870 F.3d 584, 599 (7th Cir. 2017)); *United States v. Taylor*, 522 F.3d 731, 734-36 (7th Cir. 2008) (evidence of other bad acts is admissible so long as the evidence is not introduced to show the defendant's bad character).

In *United States v. Gomez*, 763 F.3d 845 (7th Cir. 2014) (*en banc*), the Seventh
Circuit "set the roadmap for determining which camp a particular piece of other-act
evidence falls into." *Brewer*, 915 F.3d at 415. Under *Gomez*, "after a Rule 404(b)
objection, the proponent of the other-act evidence must demonstrate that the evidence
is relevant to a legitimate purpose 'through a chain of reasoning that does not rely on
the forbidden inference that the person has a certain character and acted in
accordance with that character on the occasion charged in the case.'" *Id.* (quoting
*Gomez*, 763 F.3d at 860). "If the proponent does so, the district court must then use
Rule 403 to determine 'whether the probative value of the other-act evidence is
substantially outweighed by the risk of unfair prejudice,' taking into account 'the
extent to which the non-propensity fact for which the evidence is offered actually is
at issue in the case.'" *Id.* (quoting *Gomez*, 763 F.3d at 860); *see also United States v.
Thomas*, 897 F.3d 807, 813 (7th Cir. 2018).

The Seventh Circuit has repeatedly affirmed the admission of *modus
operandi* evidence pursuant to Rule 404(b), including to admit evidence of prior
robberies in robbery cases. *See, e.g.*, *United States v. Brewer*, 915 F.3d 408, 415 (7th
Cir. 2019); *United States v. Price*, 516 F.3d 597, 604 (7th Cir. 2008); *United States v.
McGuire*, 627 F.3d 622, 626-27 (7th Cir. 2010); *United States v. Smith*, 103 F.3d 600
(7th Cir. 1996); *United States v. Powers*, 978 F.2d 354, 361-62 (7th Cir. 1992);
*United States v. Khorrami*, 895 F.2d 1186, 1194-96 (7th Cir. 1990). In *Brewer*, for
example, the Seventh Circuit affirmed the district court's decision to admit evidence
at trial, pursuant to Rule 404(b), not just of the of three bank robberies for which

defendant had been charged, but of two earlier bank robberies defendant had committed, where the government offered evidence of the earlier bank robberies "to prove identity through *modus operandi*." 915 F.3d at 415-16. The appeals court agreed with the district court's conclusion that the government had provided "propensity-free reasoning" for that purpose:

> That Brewer lingered around banks in Ohio and California [the uncharged, earlier robberies] just before they were robbed by a person clothed head to toe, who used a stick and a give-me-the-cash note, makes it more likely that he was the individual recorded at the Indiana banks [the charged robberies] just before they were robbed by a person who dressed similarly and used similar methods. That is so not because Brewer has a propensity for committing crimes, or even bank robberies, but because he and his partner had established an idiosyncratic way of doing so.

*Id.* at 415. The propensity-free reasoning offered by the government, and accepted by the courts, in *Brewer* is precisely the same propensity-free reasoning the government offers here regarding the admissibility of evidence regarding the Des Plaines, Buffalo Grove, and Oak Brook robberies under Rule 404(b). *See also United States v. Edwards*, No. 18-CR-45-1, 2021 WL 929159, (N.D. Ill. Mar. 11, 2021) (J. Bucklo) (finding evidence of prior bank robberies admissible as *modus operandi* evidence in bank robbery trial).

This evidence the government seeks to admit is admissible under Rule 404(b). The evidence of defendant's actions during the prior bank robberies is offered for a relevant, non-propensity purpose – to prove defendant's identity by demonstrating his *modus operandi* in conducting robberies. In each of the robberies, defendant targeted a stand-alone bank in a Chicago suburb. Defendant wore a "disguise"

9

consisting of a long-sleeve shirt, a hat, and glasses he did not usually wear. Defendant walked in to the bank alone and handed the teller a demand note, hand-written in ink, instructing the teller not to take steps that would alert authorities or make the robbery traceable. Defendant did not use, display or reference weapons. The defendant provided a means to carry the money in at least three of the four robberies. Defendant retrieved the demand note from the teller at the end of each robbery. During each robbery, defendant took steps to avoid leaving fingerprints on the teller counter and/or other counter areas in the bank. At the conclusion of each robbery, defendant attempted to quietly leave the bank without drawing attention to himself.

Collectively, this constitutes highly probative *modus operandi* evidence. The specific details of these bank robberies are more than "sufficiently idiosyncratic to permit an inference of pattern." *Gomez*, 763 F.3d at 854. While there may be minor dissimilarities among the robberies, those differences do not undermine the pattern of similar conduct. *See Brewer*, 915 F.3d at 415-16 (explaining that the Seventh Circuit has "considered *modus operandi* to mean a distinctive—not identical—method of operation" and finding a pattern of robberies sufficiently similar where defendant lingered around banks dressed in head-to-toe clothing and used a stick and a note demanding cash to warrant admission of evidence of uncharged robberies as *modus operandi* evidence); *see also Carson*, 870 F.3d at 599; *United States v. Robinson*, 161 F.3d 463, 468-69 (7th Cir. 1998), *cert. denied*, 526 U.S. 1078 (1999); *United States v. Hudson*, 884 F.2d 1016, 1021 (7th Cir. 1989).

10

The fact that other bank robbers may use some of the same tactics utilized by the defendant does not mean *modus operandi* evidence should be excluded. As Judge Bucklo reasoned in *Edwards*:

> [Defendant] argues that the modus operandi asserted by the government was not sufficiently distinctive to be probative of identity. Many robbers, for example, wear hoodies or brandish firearms. When all the behavioral elements are considered together, however, I am convinced that pattern of behavior asserted by the government is sufficiently idiosyncratic to qualify as modus operandi evidence.

*Edwards*, 2021 WL 929159 at *2.

Pursuant to Rule 403, the Court must then determine whether the probative value of defendant's *modus operandi* during previous bank robberies is "substantially outweighed by the risk of unfair prejudice." The probative value of this evidence cannot be overstated. In a case where the identity of the defendant as the bank robber is the central issue and the sole defense, evidence of how the defendant robs banks is of paramount probative value. In *Gomez*, 763 F.3d at 857, the Seventh Circuit noted that the degree to which a fact is contested matters to the fact-specific balancing called for under Rule 403, explaining that the probative value of the evidence increases based on "the degree to which the non-propensity issue actually is disputed." *See also, Edwards*, 2021 WL 929159 at *2 ("The *modus operandi* evidence was highly probative given that identity was strongly disputed by Mr. Edwards."), *Brewer*, 915 F.3d at 416 ("The evidence of the Ohio and California robberies was of course prejudicial – all other-act evidence is – but given that Brewer put his identity and intent squarely at issue, it was not unfairly so.").

11

Moreover, "when other acts bear a striking similarity to the acts with which the defendant has been charged, the Seventh Circuit has held that the similarity 'increases the probity of that evidence and actually decreases the potential risk of unfair prejudice.'" *United States v. Anifowoshe*, 307 F.3d 643, 647-48 (7th Cir. 2002) (quoting *United States v. Paredes*, 87 F.3d 921, 925 (7th Cir.1996)). Here, the defendant's *modus operandi* during the course of his prior bank robberies is extremely probative and on the central issue to be decided by the jury; it is not "substantially outweighed" by any "unfair prejudice" to the defendant. Indeed, given the robberies were so similar, the defendant will not be unfairly prejudiced by the non-propensity aspects of this evidence. The facts of the prior robberies are no more incendiary than the allegations relating to the instant offense that will be presented to the jury.

Finally, any prejudice to defendant can be diminished through a limiting instruction. Specifically, the Court should direct the jurors to consider the evidence of the Buffalo Grove, Oak Brook, and Des Plaines robberies only to help them decide defendant's identity and *modus operandi* during the Glen Ellyn robbery. *See Brewer*, 915 F.3d at 416 (approving the use of such an instruction). When coupled with proper limiting instructions, which may be given at the time the evidence is admitted as well as during the final jury instructions, any unfair prejudice stemming from this evidence will be far less than its great probative value. *See Gomez*, 763 F.3d at 860 (An "[a]ppropriate jury [instruction]" that "may help to reduce the risk of unfair prejudice inherent in other-act evidence.").

12

To further reduce potential prejudice, the government proposes that the parties can refer to the admissions made by defendant in defendant's prior plea agreement as "defendant's prior sworn admissions" at trial, rather than introducing the fact of defendant's plea or conviction. *See, e.g., Brewer*, 915 F.3d at 417 (noting with approval the court excluded evidence of conviction of one of Brewer's prior robberies).

## III.  Additional Motions In Limine

### A.  Motion to bar jury nullification arguments

The government respectfully moves this Court to preclude the defense from arguing or presenting evidence designed to elicit jury nullification.

It is improper for a defendant to suggest that the jury should acquit a defendant even if it finds that the government has met its burden of proof. *See, e.g., United States v. Laguna*, 693 F.3d 727, 730 (7th Cir. 2012); *United States v. Dunkin*, 438 F.3d 778, 780 (7th Cir. 2006); *Smith v. Winters*, 337 F.3d 935, 938 (7th Cir. 2003) ("A defendant has of course no right to ask the jury to disregard the judge's instructions ('jury nullification')."); *United States v. Perez*, 86 F.3d 735, 736 (7th Cir. 1996) ("An unreasonable jury verdict, although unreviewable if it is an acquittal, is lawless, and the defendant has no right to invite the jury to act lawlessly. Jury nullification is a fact, because the government cannot appeal an acquittal; it is not a right, either of the jury or of the defendant."); *Scarpa v. Dubois*, 38 F.3d 1, 11 (1st Cir. 1994) ("[D]efense counsel may not press arguments for jury nullification in criminal cases").

13

Although the government cannot anticipate every form of "jury nullification" defendant may seek to inject, it moves to exclude the potential areas noted below, as well as any argument or questioning, no matter what its form, that, in effect, would "encourage a jury to acquit under any circumstances regardless of the applicable law or proven facts." *United States v. Anderson*, 716 F.2d 446, 450 (7th Cir. 1983).

### 1.     Penalties Faced by Defendant if He is Convicted

Crossley is charged with an offense that carries a 20-year maximum sentence. The Seventh Circuit has held that "arguing punishment to a jury is taboo." *See, e.g., United States v. Richardson*, 130 F.3d 765, 778 (7th Cir. 1997), overturned on other grounds, 526 U.S. 813 (1999); *United States v. Lewis*, 110 F.3d 417, 422 (7th Cir. 1997). Argument and evidence concerning punishment are improper because the potential penalty faced by a defendant is irrelevant to the jury's determination of guilt or innocence. *See, e.g., Shannon v. United States*, 512 U.S. 573, 579 (1994) ("It is well established that when a jury has no sentencing function, it should be admonished to 'reach its verdict without regard to what sentence might be imposed.'" (footnote omitted) (quoting *Rogers v. United States*, 422 U.S. 35, 40 (1975))); *Aliwoli v. Carter*, 225 F.3d 826, 830 (7th Cir. 2000); 7th Cir. Pattern Crim. Jury Instr. 4.08 (2012) ("In deciding your verdict, you should not consider the possible punishment for the defendant[s] [who [is; are] on trial].") . Mention of the potential penalties faced by a defendant—including possible imprisonment, restitution, or fines—would serve only the improper purpose of inviting the jury to consider the penal consequences of a conviction defendant and, ultimately, nullification. They should accordingly be

14

excluded.

###### 2. Motivations for Investigating or Prosecuting this Case

The government seeks to bar any evidence pertaining to why this case was charged at the federal rather than state level.

Claims of selective or vindictive prosecution are irrelevant to the merits. *United States v. Armstrong*, 517 U.S. 456, 463 (1996) ("A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution."). "In the ordinary case, 'so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion.'" *Id.* at 464 (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)). Accordingly, evidence bearing on the government's decision to prosecute is "extraneous and collateral" and, thus, properly excluded from trial. *United States v. Johnson*, 605 F.2d 1025, 1030 (7th Cir. 1979) (affirming the exclusion of evidence offered to show that the "indictment was a political instrument"). To the extent defendant wishes to raise these issues, he must raise them with the Court, not the jury. *See United States v. Jarrett*, 705 F.2d 198, 204–05 (7th Cir. 1983) (finding claims of selective prosecution must be raised before trial); *United States v. Washington*, 705 F.2d 489, 495 (D.C. Cir. 1983) (finding that "the issue of selective prosecution is one to be determined by the court"). Defendant has filed no such motions. Accordingly, evidence and argument related to these issues, in any form,

should be barred by the Court.

### 3. Allegations or Claims of Outrageous Government Conduct

The Court should also preclude any evidence or argument related to so-called "outrageous government conduct." The Seventh Circuit has repeatedly held that "[o]utrageous government conduct is not a defense in this circuit." *United States v. Stallworth*, 656 F.3d 721, 730 (7th Cir. 2011); *see also United States v. Boyd*, 55 F.3d 239, 241–42 (7th Cir. 1995) (stating that "the doctrine [of outrageous governmental misconduct] is moribund" (alteration in original) (quoting *United States v. Santana*, 6 F.3d 1, 4 (1st Cir. 1993))). Moreover, the issue of government misconduct is a matter of law for determination by the Court, and must be raised in the form of a pretrial motion. *See United States v. Swiatek*, 819 F.2d 721, 726 (7th Cir. 1987) (noting that "[a]ll of the circuits that have considered the question have held that the issue of outrageous government conduct is not a jury question.") (collecting cases).

Yet, there is a "tendency in criminal cases to try some person other than the defendant and some issues other than his guilt." *United States v. Griffin*, 867 F. Supp. 1347, 1347 (N.D. Ill. 1994) (quoting *Sears v. Romiti*, 50 Ill.2d 51, 277 N.E.2d 705 (1971)). In these types of cases, the "thrust of the defense is this: the prosecution was not nice or could have done it better and so the jury ought to acquit, whether or not guilt has been proved beyond a reasonable doubt." *Id*. at 1347. In the face of this increasing tendency to interject themes of "government misconduct" into a defense strategy, courts have granted motions in limine "to bar defendants from presenting evidence or making arguments to the jury suggesting that they should be acquitted

16

because the government engaged in misconduct in the course of its investigation." *United States v. Shields*, No. 90 CR 1044, 1991 WL 236492, at *3 (N.D. Ill. 1991); *see also United States v. Boender*, No. 09 CR 186, 2010 WL 811296, at *3 (N.D. Ill. March 3, 2010) ("The Seventh Circuit does not recognize an outrageous government conduct defense: the doctrine is more than moribund—it is stillborn because it never had any life; and it certainly has no support in the decisions of this court, which go out of their way to criticize the doctrine."); *United States v. Katz*, No. 92 CR 94, 1992 WL 137174, at *5 (N.D. Ill. June 15, 1992); *United States v. Finley*, 708 F. Supp. 906, 913 (N.D. Ill. 1989) (granting motion in limine to preclude evidence "designed only to persuade the jury that defendants should be acquitted because the government engaged in misconduct during its investigation"). Accordingly, the government moves to bar the defense from introducing evidence or argument of outrageous government conduct.

### B. Motion to preclude argument concerning missing witnesses

It is within the Court's discretion to prohibit argument by either side concerning missing witnesses not under the control of either side. *United States v. Sblendorio*, 830 F.2d 1382, 1394 (7th Cir. 1987). "The reasons for not calling witnesses are so many and so complex—from … concern about the witness's appearance and demeanor to concern about the content of the testimony to a belief that the witness would invoke the privilege against self-incrimination—that a full exploration could take the trial far afield." *Id.* Thus, "when [a] witness is equally available to both sides, the preferred practice is to preclude the [missing witness] argument rather than to leave the jury free to speculate about a lot of non-evidence." *United States v. Simpson*,

17

974 F.2d 845, 848 (7th Cir. 1992). "The traditional position, limiting comment by judge or counsel to a witness under the control of the adverse party … is sound." *Id*. Therefore, the government requests that the Court prohibit defendant from introducing evidence about, or arguing that any relevant inference can be drawn from, the fact that additional witnesses did not testify.

Alternatively, if the Court allows defendant to introduce evidence or make any such argument regarding missing witnesses, the government seeks permission to respond to this argument appropriately. As the Seventh Circuit has held, ordinarily, a prosecutor may reply to "an argument by the defense that the absence of some witness counts against the prosecution" by pointing out that the defense has the same subpoena power as the government. *Sblendorio*, 830 F.2d at 1392–93.

### C. Motion to admit Crossley's prior conviction if he testifies

Defendant has three prior felony convictions: a 2013 conviction for bank robbery, for which he was sentenced to 48 months' imprisonment; a 2005 conviction for receiving stolen property, for which he was sentenced to 90 days' imprisonment; and a 2005 conviction for possession of a controlled substance, for which he was sentenced to 90 days' imprisonment.

If Crossley testifies, the government would seek to introduce evidence of these convictions.

Federal Rule of Evidence 609 permits the government to attack a defendant's character for truthfulness with evidence of his or her prior criminal convictions. Pursuant to Federal Rule of Evidence 609(a)(1)(B), evidence of defendant's 2013

18

conviction *must* be admitted, so long as the probative value of the evidence outweighs its prejudicial effect to the defendant. Pursuant to Rule 609(b), defendant's 2005 convictions, as convictions that are over 10 years old, are admissible if their probative value substantially outweighs their prejudicial effect and the government provides the defense of its intention to use this evidence. Fed. R. Evid. 609(b).

There is a five-part balancing test used to determine whether the probative value of defendant's felony convictions outweigh their prejudicial effect. The factors are: (1) the impeachment value of the prior crime; (2) the point in time of the conviction and defendant's subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of defendant's testimony; and (5) the centrality of the credibility issue. *United States v. Montgomery*, 390 F.3d 1013, 1015 (7th Cir. 2004)

With respect to the first factor, the defendant's convictions for bank robbery, receipt of stolen property and possession of a controlled substance are serious crimes which have significant impeachment value if the defendant testifies. With respect to the second factor, although two of the convictions are older, they show a pattern of felonious conduct spanning a decade; further, the sentence for the 2013 conviction ended only three years before the defendant's conduct in this case. With respect to the third factor, two of the defendant's convictions (receipt of stolen property and possession of a controlled substance) are entirely dissimilar to the charged offense. Nonetheless, to minimize the risk of prejudice to the defendant, the government's intent at this time is only to introduce the fact of defendant's prior felony conviction,

19

the dates of conviction and sentence, and the length of defendant's sentence, without introducing the specific nature of the conviction. With respect to the fourth and fifth factors, in the event the defendant testifies, it will undoubtedly be to advance the primary defense in the case – that Crossley was not the bank robber. Under this scenario, Crossley's credibility will become central to the case. By extension, Crossley's prior conviction is a relevant factor for the jury to consider in assessing his credibility at the time of his testimony.

**D.    Motion to bar comments regarding discovery**

The government respectfully moves this Court to preclude defendant from requesting discovery from witnesses or opposing counsel, moving the Court for such discovery, or otherwise commenting on discovery matters in the presence of the jury. Requests for, and motions related to, discovery made in front of the jury are inappropriate and may create the impression that one side has suppressed information as a means of seeking an unfair advantage. *See United States v. Mandell*, No. 12 CR 842, 2014 WL 287520, at *3 (N.D. Ill. Jan. 27, 2014); *United States v. Dochee*, No. 08 CR 108-4, 2009 WL 102986, at *1 (N.D. Ill. Jan. 15, 2009) (granting the government's motion *in limine* to exclude comments on discovery because it "could create the impression that the opposing party is withholding information."). In the same vein, evidence or argument related to missing evidence absent proof of bad faith is also improper. *See United States v. Folami*, 236 F.3d 860 (7th Cir. 2001). Therefore, discovery requests should be made to the Court or opposing counsel outside the presence of the jury so that no prejudice results to either side. *See*, *e.g.*, *United States*

20

*v. Gray*, No. 07 CR 166, 2010 WL 1258169, *3 (N.D. Ind. Mar. 26, 2010).

### E.     Motion to bar commentary regarding evidentiary rulings

The government respectfully moves this Court to preclude counsel from referring to excluded evidence or commenting on the Court's evidentiary and pretrial rulings in front of the jury. It is improper for counsel to comment on excluded evidence or suggest that it might affect the jury's analysis had the Court admitted it. *See Soltys v. Costello*, 520 F.3d 737, 744 (7th Cir. 2008) (holding that comments during opening statement on excluded evidence were improper); *Solles v. Israel*, 868 F.2d 242, 245 (7th Cir. 1989) (criticizing prosecutor's "improper remarks in front of the jury including commenting on excluded evidence"). Indeed, such comments are irrelevant to whether, on the basis of the evidence presented, the prosecution has proven its case beyond a reasonable doubt. The jury is not allowed to speculate on evidence it has not heard. Counsel may argue the propriety of evidence in motions in limine. Once the Court has ruled, however, the matter is concluded and counsel are not free to decide for themselves what evidence is actually admissible. *Rutledge v. Cook County*, No. 06 C 6214, 2009 WL 3187904, at *6 (N.D. Ill. Sept. 30, 2009).

### F.     Motion to preclude any argument or evidence relating to alibi or unavailability, mental defect, or public authority

Under the Federal Rules of Criminal Procedure, a defendant is required to provide the government with notice of: (1) any alibi or similar defense, including any defense asserting the defendant's unavailability on or near the dates named in the indictment (Rule 12.1); (2) any defense of a mental defect inconsistent with the state

21

of mind required for the offense charged (Rule 12.2); and (3) any defense of public authority (Rule 12.3). Because Crossley has not notified the government of his intent to raise any of these defenses, the government requests that he be prohibited from introducing evidence or argument of such defenses at trial.

### G. Motion to bar evidence of lawful acts

The government respectfully moves this Court to preclude defendant from presenting evidence of, or making reference to, lawfulness, non-corrupt conduct, or prior good acts, except reputation or opinion evidence offered by character witnesses strictly in accord with Federal Rule of Evidence 405(a).

Defendant may seek to admit evidence that, on prior occasions, he acted in a lawful manner. He may further argue that, because he previously performed good acts, he could not have committed the charged offenses. "Evidence that a defendant acted lawfully on other occasions is generally inadmissible to prove he acted lawfully on the occasion alleged in the indictment." *United States v. Reese*, 666 F.3d 1007, 1020 (7th Cir. 2012); *see also United States v. Heidecke*, 900 F.2d 1155, 1162 (7th Cir. 1990); *United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990) ("A defendant may not seek to establish his innocence … through proof of the absence of criminal acts on specific occasions."); *United States v. Johnson*, No. 08 CR 466, 2011 WL 809194, at *4 (N.D. Ill. Mar. 2, 2011) ("[E]vidence of specific lawful acts of defendants is not properly introduced to show that defendants did not have the requisite intent to commit the crimes charged"). Thus, any evidence or argument regarding defendant's alleged prior good acts or non-corrupt behavior should be excluded.

22

Dated: August 13, 2021   Respectfully submitted,

         JOHN R. LAUSCH, JR.
         United States Attorney

By: */s/ Cornelius Vandenberg*
         CORNELIUS VANDENBERG
         ANN MARIE E. URSINI
         Assistant United States Attorney
         219 South Dearborn Street, Fifth Floor
         Chicago, Illinois 60604
         (312) 353-5300