IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 20 CR 369 |
| MARTIN CROSSLEY, | ) ) | Hon. Martha M. Pacold |
| Defendant. | ) ) | |

**DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION TO ADMIT OTHER-ACTS EVIDENCE**

NOW COMES, the Defendant, MARTIN CROSSLEY, by and through his attorney, QUINN A. MICHAELIS, and respectfully moves this Honorable Court to issue an order precluding the Government from presenting specific evidence of other crimes to the jury pursuant to Fed. R. Evid. Rule 404(b) and 403. Defendant states to the Court the following in support of his opposition:

## INTRODUCTION

The government filed a Notice of Intent to Offer Evidence Pursuant to Federal Rule of Evidence 404(b), and to Impeach By Criminal Conviction Pursuant to Rule 609(b). (Doc. at 94 ). The government seeks to admit a three previous bank robberies for the purported reason of establishing Mr. Crossley's identity in this case through *modus operandi*. The proposed convictions are offered for propensity purposes only, does not prove identity or *modus operandi*, are not similar enough and close enough in time to the present case, and are unfairly prejudicial. As such, this Court should bar the government's proffered 404(b) evidence.

1

ARGUMENT

Under Federal Rule of Evidence 404(b), "Evidence of other crimes, wrongs, or acts ins not admissible to prove the character of a person in order to show action in conformity therewith," but may be admissible for "other purposes such e as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

The Seventh Circuit has held that a defendant's prior bad act may be admitted to demonstrate "a defendant's distinctive manner of operation, or *modus operandi*." *United States v. Simpson*, 470 F.3d 492, 497-8 (7th Cir. 2007). Such evidence is admissible under a *modus operandi* theory only when "the evidence bears 'a singular strong resemblance to the pattern of the offense charged' with the similarities between the two crimes 'sufficiently idiosyncratic to permit an inference of pattern for purpose of proof.'" *Id*. at 498 (quoting *United States v. Thomas*, 321 F.3d 627, 634-35 (7th Cir. 2003). The Seventh Circuit has cautioned that "if defined broadly enough, *modus operandi* evidence can easily become nothing more than the character evidence that Rule 404(b) prohibits." *United States v. Smith*, 103 F.3d 600, 603 (7th Cir. 1996). Further, "if a pattern so generic can establish *modus operandi* this fairly limited exception to Rule 404(b) would gut the Rule, rendering it useless as a check on character evidence that would otherwise be inadmissible." *Thomas*, 321 F.3d at 635.

To determine whether the proffered convictions establish a *modus* operandi, the Court must evaluate whether the commonalities between the robberies make

them "clearly distinctive from the thousands of robberies committed each year." *United States v. Smith*, 103 F. 3d 600, 603 (7th Cir. 1996). In so evaluating, the focus is on "whether the similarities between the other acts evidence and the charged crime clearly distinguish the defendant from other criminals committing the same crime." *Id* (noting the idiosyncrasies as the robber's build, the use of a getaway driver, brandishing a knife, as opposed to a gun, and holding the knife in a distinctive manner, going behind the counter to take money rather than demanding it from the teller, and targeting small, sparsely staffed banks.)

The similarities the government points to as distinctive are instead, generic similarities that do not distinguish the robberies from the thousands committed each year. The government suggest that the mere fact of wearing a disguise is sufficient to establish *modus operandi*, pointing out that in the previous robberies and the charged robbery, the disguise consisting of a long sleeve shirt, hat, and glasses. "Many robbers disguise their identifies." *United States v. Seals*, 419 F.3d 600, 607 (7th Cir. 2005) (excluding reverse 404(b) evidence because two robberies were dissimilar). A long sleeve shirt and knit hat are not idiosyncratic items of clothing, particularly in this case where the clothing and hat the robber was described as wearing is particularly distinctive (red shirt, yellow safety vest and large panama style hat). In the three previous robberies, the evidence proffered by the government suggests that Mr. Crossley wore dark rimmed glasses. The government suggests that these were glasses that Mr. Crossley "did not usually wear," but provides no proof of this contention. Further, the "glasses" worn by the robber in this case were not dark

3

rimmed glasses, but rather described by the witnesses as having pink lenses, and look more like safety googles than prescription glasses.

Further, the government suggests that there is some distinctiveness about all of the robberies occurring in standalone banks in the Chicago suburbs. There are potentially thousands of standalone banks in the Chicagoland area, and that architectural feature is more likely to be the predominant type of bank in the suburbs. Further, The Oakbrook robbery occurred 7 miles from the Glen Ellyn bank charged in this case. But the Buffalo Grove bank is located 24 miles from the bank charged in this case, and in another county (Cook). Similarly, the Des Plaines bank is located 25 miles from the bank in this case, and is also in Cook County. "If this is all it took to admit evidence of other crimes, district courts would be reluctant to exclude evidence of dissimilar bank robberies in neighboring counties for weeks after." *Id.* at 607 (stating "[t]hirty-one miles might not appear very far on a globe, but in practical terms these two robberies occurred in separate counties.")

In *Powers*, cited by the government and distinguishable from the current case, the court described with great detail the idiosyncratic details of the defendant's robberies:

> in all bank robberies here involved, or the attempt, the defendant wore a hat, not the common ski mask or stocking mask. The hat was described in the different circumstance by different witnesses as white, Panama, grey or grayish, very similar descriptions. An FBI agent testified the most common bank robbing disguise was the ski mask or stocking mask, but a hat alone could not meet the test. In addition however, the defendant in each instance wore a suit and carried a brief case. Not some informal attire. Similar typewritten notes in size, content and type were given to the tellers. In each instance the defendant wore glasses, sometimes described as wire-rimmed and tinted or sun glasses.

4

*United States v. Powers,* 978 F.2d 354, 361 (7th Cir. 1992).

The cases cited by the government are easily distinguishable from the current case. In *Brewer*, the prior acts involved robberies that were committed by a person who used a long wooden stick to prop the bank doors open for fast escape after the robberies, while a partner lingered outside of the bank. *United States v. Brewer*, 915 F.3d 408, 411 (7th Cir. 2019). Unindicted previous robberies were admitted to show the defendant's identity through *modus operandi*, in that the charged robberies and the robberies admitted under Rule 404(b) all involved the distinctive tactic of using a long stick to prop the bank doors open. *Id.* at 415-16.

In *Price*, the distinctive characteristics between the previous robberies and the charged robberies were that the "[e]ach robbery was an early weekday morning ambush of an employee opening a bank for business. Likewise, in each, the robber(s) forced the bank employee(s) at gunpoint to enter the bank, turn of the alarm, access the vault, and hit the ground before the robbers made their escapes. The banks were located only 5.4 miles apart." *United States v. Price*, 516 F.3d 597, 604 (7th Cir. 2008).

In each of these cases, unique and memorable characteristics of the crimes carried over from the 404(b) evidence to the charged offenses. No such unique or memorable characteristics are present in this case.

In fact, the idiosyncrasies between the three robberies Mr. Crossley was convicted of are absent from the robbery in this case. In both the Oak Brook and Des Plaines robberies, Mr. Crossley pulled his shirt sleeves over his hands to prevent his

5

fingers from touching any of the surfaces. The robber in this case, although wearing a long sleeve shirt, never pulled the sleeves down over his hands in this distinctive manner. In both the Oakbrook and the Buffalo Grove robberies, Mr. Crossley used a plastic bag and held it open for the teller to place the cash into. The robber in this case pushed a padded envelope to the teller and motioned for her to fill it. In the Buffalo Grove and Oak Brook robberies, Mr. Crossley spoke to the victim tellers, in this case, the robber said nothing to the teller.

With respect to the demand notes, the language used in the demand notes is inconsistent across the robberies. According to the evidence disclosed by the government relating to the previous robberies, the victim tellers for the Buffalo Grove bank robbery have differing memories about the contents of the note-Victim Teller A's memory of the note's contents square with the factual basis in Mr. Crossley's plea agreement. However, Victim Teller B, who was also handed the note during the robbery recalled the note stating "This is a robbery. This is real. No alarm. No dye packs and no GPS." Victim Teller B's memory of the phrasing on the note is more in line with the demand note from the Des Plaines robbery, which similarly mentioned dye packs or tracing devices.

The purported similarities between the previous convictions and the robbery charged in this case are simply generic similarities that do not distinguish this particular robbery from other robberies and is not sufficiently similar to the previous convictions to be called "idiosyncratic." As such, the proffered Rule 404(b) evidence is by definition, propensity evidence and must be excluded.

6

WHEREFORE, the defendant, MARTIN CROSSLEY, respectfully moves this Court to exclude the other acts evidence set forth in the government's Notice Regarding 404(b) Matters.

Respectfully submitted,

s/Quinn A. Michaelis

_____
Quinn A. Michaelis
Attorney for MARTIN CROSSLEY
Attorney ID No. IL 6293379
73 W. Monroe, Suite 106
Chicago, IL 60601
(312)714-6920

## CERTIFICATE OF SERVICE

I hereby certify that on August 26, 2021 I electronically filed the above

**DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION TO ADMIT OTHER-ACTS EVIDENCE**

with the Clerk of Court using the CM/ECF system to all listed parties in the case.

Respectfully Submitted on August 26, 2021.